SUMMARY ORDER
Defendant Discount Trophy & Co., Inc. (“Discount”) appeals from the judgments of the district court, entered after a two-day bench trial, awarding plaintiff Crown Awards, Inc. (“Crown”), inter alia, $22,845.18 in damages and $165,528.01 in attorney’s fees and costs for Discount’s infringement of Crown’s copyrights in the design of a diamond-shaped spinning trophy.[1] We assume the parties’ familiarity with the underlying facts and procedural history of the case, to which we refer only as necessary to explain our decision.
1. Copyright Principles
To prevail on a claim of copyright infringement, a plaintiff must demonstrate both ownership of a valid copyright and infringement. See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 108-09 (2d Cir.2001). “To establish infringement, the copyright owner must demonstrate that (1) the defendant has actually copied the plaintiffs work; and (2) the copying is illegal because a substantial similarity exists between the defendant’s work and the protectible elements of plaintiffs.” Id. at 110 (internal quotation marks omitted). Actual copying may be proved directly or indirectly. “[IJndirect evidence of copying *577 includes proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works.” Hamil Am., Inc. v. GFI, 193 F.3d 92, 99 (2d Cir.1999).
Because direct proof of access is often impossible to adduce, see 4 Nimmer on Copyright § 13.02, the law permits a plaintiff to carry his burden on this point through evidence that “an alleged infringer had a ‘reasonable possibility’ ” of access to the original work. Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir.2003) (quoting Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir.1988)). Notably, “[a] court may infer that the alleged infringer had a reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a close relationship with the infringer.” Id. at 53 (quoting Towler v. Sayles, 76 F.3d 579, 583 (4th Cir.1996) (emphasis in Jorgensen))-, see also Gaste v. Kaiserman, 863 F.2d at 1067 (“Access through third parties connected to both a plaintiff and a defendant may be sufficient to prove a defendant’s access to a plaintiffs work.”).
If a plaintiff cannot demonstrate a reasonable possibility of access, its infringement claim will fail absent proof of a “striking” similarity between the original and infringing works. See Jorgensen v. Epic/Sony Records, 351 F.3d at 56 (“We have held that where the works in question are ‘so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.’ ” (quoting Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir.1995))). See generally Arnstein v. Porter, 154 F.2d 464, 468-69 (2d Cir.1946) (“In some cases, the similarities between the plaintiffs and defendant’s work are so extensive and striking as, without more, both to justify an inference of copying and to prove improper appropriation.”). If a plaintiff demonstrates actual copying through proof of a reasonable possibility of access and similarities probative of copying, however, it can prevail on its infringement claim by demonstrating that defendant’s work is “substantially similar to that which is original in the plaintiffs expression.” Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 129 (2d Cir.2003). With “inexact copies,” id. at 132-33, this assessment proceeds by a comparison of the “total concept and feel of the contested works” as “instructed by common sense,” Boisson v. Banian, Ltd., 273 F.3d 262, 272, 273 (2d Cir.2001) (internal quotation marks omitted). The court must “analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking.” Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d at 134-35.
2. Decision Below
On appeal from a bench trial in a copyright infringement action, we review the district court’s findings of fact for clear error and its conclusions of law de novo. See Well-Made Toy Mfg. Corp v. Goffa Int’l Corp., 354 F.3d 112, 115 (2d Cir.2003). We review the district court’s similarity determination de novo “because credibility is not at stake and all that is required is a visual comparison of the products — a task we may perform as well as the district court.” Boisson v. Banian, Ltd., 273 F.3d at 272.
Here, the district court found that Crown owned a valid copyright in its diamond-shaped spinning trophy and that Discount had access to Crown’s design through its receipt of Crown’s 2006 catalog and its monitoring of Crown’s products. The district court found, however, that *578 Crown had failed to demonstrate that Xia-men Xihua Arts and Crafts (“Xiamen”), the manufacturer of the allegedly infringing trophy, also had access to Crown’s design because there was no record evidence (1) that Discount asked Xiamen to manufacture a trophy that looked like Crown’s copyrighted trophy, or (2) that Xiamen ever received a Crown catalog. See Trial Tr. at 145. While acknowledging that Crown’s design could be viewed on the Internet after January of 2006, the district court noted that “there is no evidence in the record about the Internet habits” of Xiamen’s principal. Id. at 146. The district court nevertheless inferred access on the part of Xiamen from the “striking” similarity between the diamond-shaped spinning trophies sold by Crown and Discount. Id. at 149. The court further found that the two products were “substantially” similar and shared the same “total concept and feel.” Id. at 150.
Rejecting Discount’s proffered affirmative defense that Xiamen independently created the design for the infringing diamond-shaped spinning trophy, the court found that the credibility of Mr. Lin, Xia-men’s principal, was “non-existent.” Id. at 141.
I find it completely incredible that Mr. Lin who operates a company that makes resin products and who has no production capability to make plastic products would suddenly get it into his head to create a plastic trophy, let alone a trophy that would look like this particular trophy. I find it utterly incredible that Mr. Lin would subcontract out the making of extensive molds purely as a speculative venture for a totally novel product for his business without having any customers for the product.
Id. at 142. The court further found that “[t]he timing of the order from Discount is ... suggestive of copying,” insofar as “[t]he first Discount trophies were ordered from Lin in the mid summer of 2006, which is perfect timing if you worked forward from the publication of the Crown catalogs in 2006 and assumed that Mr. Lin got to work on fabricating a knockoff shortly thereafter.” Id. at 143^44. In sum, the district court concluded: “I find independent creation to be not only unlikely but absolutely impossible to believe.” Id. at 144. Accordingly, it ruled in favor of Crown on its claim of infringement.
3. The Instant Appeal
Discount principally challenges the district court’s findings of both “striking” and “substantial” similarity. In urging affir-mance, Crown submits that though there was no error in the district court’s finding of striking similarity, the district court erred in requiring proof that Xiamen actually viewed Crown’s copyrighted design. Crown argues that the proper standard required only proof of a “reasonable possibility” that Xiamen had access to Crown’s design combined with similarities probative of copying and substantial similarity between the products in question. See Jorgensen v. Epic/Sony Records, 351 F.3d at 51. We agree with Crown both as to the standard of proof and its satisfaction of that standard.[2]
*579 First, while we identify no error in the district court’s detailed and thorough factual findings, we conclude that Crown was not required to prove Xiamen’s actual access to Crown’s trophy design. Our precedent makes clear that a plaintiff “is not required to establish actual access” to establish infringement. Jorgensen v. Epic/ Sony Records, 351 F.3d at 55.
Second, the district court’s factual findings, as a matter of law, establish a “reasonable possibility” that Xiamen had access to Crown’s design. Id. at 51. The district court found that the nature of Xia-men’s business, the timing of Discount’s orders from Xiamen, and Mr. Lin’s failure to offer any credible account of independent creation of the allegedly infringing design made it “absolutely impossible to believe” that Xiamen created the infringing design without coordinating with Discount in advance. Trial Tr. at 144; see also id. at 142 (finding “utterly incredible that Mr. Lin” would arrange for production of infringing trophy “without having any customers for the product”); id. at 143 (noting that “defendant is Mr. Lin’s only United States customer”). These facts, together with the district court’s finding that Discount had direct access to Crown’s trophy design through its receipt of the Crown catalog and its monitoring of Crown’s products, compel a conclusion of a “reasonable possibility” that, through Discount, Xaamen had access to Crown’s work prior to creating Discount’s infringing product. Jorgensen v. Epic/Sony Records, 351 F.3d at 51.[3] And in light of the similarities between the works, we agree with the district court’s determination that Crown established actual copying. Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 123 (2d Cir.1994).
Third, for substantially the reasons stated by the district court in its detailed analysis of the issue, we agree that Discount unlawfully appropriated Crown’s protected expression. See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d at 136. Although Crown’s design consists of “a compilation of unprotectible elements” — i.e., stars, spinners, a diamond shape, etc. — its copyright protects “the original way in which [it] has ‘selected, coordinated, and arranged’ the elements of [its] work.” Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1003-04 (2d Cir.1995) (quoting Feist Publ’ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 358, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)); see also Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d at 136 (“T[he] non-mechanical adaptation of individually un-protectible elements from the public domain is precisely the type of ‘original selection’ that the Supreme Court indicated *580 was protectible expression in Feist”). On de novo examination of both Crown’s copyrighted trophy and Discount’s allegedly infringing copy, we conclude, as the district court did, that Discount’s product, while not identical to Crown’s, mimics Crown’s protectable aesthetic decisions in the arrangement of the trophy’s elements to an extent that their “total concept and feel” are the same. Id. at 133-34.
4. Conclusion
We have considered Discount’s additional arguments and conclude that they are without merit. For the foregoing reasons, the judgments of the district court are AFFIRMED.

. The consolidated appeal concerns only the award of attorney’s fees and costs under 17 U.S.C. § 505, see Crown Awards, Inc. v. Discount Trophy & Co., 564 F.Supp.2d 290 (S.D.N.Y.2008), and, in that appeal, Discount relies solely on the arguments it has raised in the lead appeal challenging the district court’s finding of copyright infringement.

. Discount submits that Crown failed to argue in the district court that a reasonable possibility of Xiamen's access could be inferred, at least in part, from the business relationship between Discount and Xiamen. See Appellant’s Reply Br. at 14-15. Crown contended below that Xiamen “had the exact same access that [Discount] had,” insofar as Crown’s design was published, on the market, and accessible on the internet as of January 2006. Trial Tr. at 136. To the extent that Crown has, in response to the district court’s findings, also emphasized that the close business relationship between Discount and Xiamen provides a basis for inferring access, the prudential waiver doctrine does not require us to ignore such contentions, see In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir.2008), particularly where, as here, “there *579 is no need for additional fact-finding.” Allianz Ins. Co. v. Lerner, 416 F.3d 109, 114 (2d Cir.2005) (internal quotation marks omitted). Moreover, as Crown correctly notes, we "may affirm the district court’s judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court.” Doninger v. Niehoff, 527 F.3d 41, 50 n. 2 (2d Cir.2008) (internal quotation marks omitted).

. Discount acknowledges that "[a] court may infer that the alleged infringer had a reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a close relationship with the infringer,” Towler v. Sayles, 76 F.3d at 583, but contends that the relationship between it and Xiamen was not sufficiently "close” to support such an inference here. We need not decide whether the nature of the business relationship between Discount and Xiamen, standing alone, would permit an inference of indirect access. Rather, we hold simply that the district court's factual findings regarding the circumstances surrounding the creation of the infringing product by Xiamen compel the conclusion that there was a reasonable possibility that Xiamen had access to Crown's design.