**Antoinette MCKAIN, Plaintiff,**

v.

**ESTATE OF Donald RHYMER, Carlos Saldanha, Blue Sky Studios Inc., 20th Century Fox Film Studios, and Joshua Spencer, Defendants.**

**Civil No. 3:14–cv–00807(AVC)**

United States District Court, D. Connecticut.

Signed April 14, 2015

---

Antoinette McKain, Stamford, CT, pro se.

Elizabeth A. McNamara, Davis Wright Tremaine LLP, New York, NY, Jonathan M. Shapiro, Shapiro Law Offices, LLC, Middletown, CT, for Defendants.

## *RULING ON THE DEFENDANTS' MOTION TO DISMISS*

Alfred V. Covello, United States District Judge

This is an action for damages in which the plaintiff, Antoinette McKain, argues that the defendants, Blue Sky Studios, Inc., Twentieth Century Fox Film Corporation, and film director Carlos Saldanha, infringed upon the copyrights of her works. It is brought pursuant to 28 U.S.C. § 1338, which states that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, ... copyrights and trademarks."

The defendants have filed the within motion to dismiss, asserting that the complaint is "devoid of plausible facts sufficient to state a claim against Defendants." For the following reasons, the motion to dismiss (document no. 16) is GRANTED.

## FACTS

An examination of the amended complaint reveals the following allegations:

McKain is the author of a manuscript entitled *Avian Nation, The Story of Birds,* "Crabs In ABarrel" Book I. The defendants produced, animated, and directed the films *Rio* and *Rio 2,* which were released in 2011 and 2014, respectively.

The defendants paid individuals to infringe upon McKain's copyrights, hack her computers, stalk her, and harass her.[1] As a result, the defendants have "plagiarized [McKain's] manuscripts ... with the release of a movie titled 'RIO 2' based on two of the main characters of [the] manuscript," and they have "[stolen] the premise of [her] manuscript, *Avian Nation, The Story of Birds,* "Crabs In Abarrel" Book I." For example, the characters in *Avian Nation,* a blue Macaw named Marty and a Toucan named Tycoon, live in a rainforest in Africa and the characters in *Rio 2,* "a male and female blue Mccaw," live in a rainforest in Brazil.

## STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings. *Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir.2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Therefore, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Importantly, however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

1. Specifically, "from 2010–2014 pirates and paid hackers, have remote accessed, and hacked [McKain's] computer and email, sent Trojans and malware to destroy [McKain's] work after they have stolen it and broke into [McKain's] home to steal [her] manuscript journals, notebooks and illustrations."

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993). Because the plaintiff is proceeding *pro se*, the court reads the pleadings "liberally and interpret[s] them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir.2003).

## DISCUSSION

Although most of the allegations center around copyright infringement, the complaint also alleges that the defendants have engaged in "acts of Anti–Trust," stalking, harassment, and unlawful wiretapping.

## I. Copyright Infringement

The defendants argue that the allegations "are devoid of supporting facts and based on nothing but conjecture" and "are not, as a matter of law, sufficient to allege that defendants had a reasonable possibility of accessing her work(s)." McKain responds that it is possible that a thief paid by the defendants "entered [her] home and robbed [her] when [she] was away." She contends that pages of her manuscripts appear in both films.[2]

■ "Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated...." 17 U.S.C. § 102(a). "In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

### A. Ownership of a Valid Copyright

"The Copyright Act makes a certificate of registration from the U.S. Register of Copyrights *prima facie* evidence of the valid ownership of a copyright...." *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992). For purposes of this motion to dismiss, the court will assume that the plaintiff owns a valid copyright in the works described in the complaint.[3] Therefore, the court will focus upon the second element of the copyright infringement analysis.

### B. Unauthorized Copying

■ "To satisfy the second element of an infringement claim—the 'unauthorized copying' element—a plaintiff must show both that [her] work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Jorgensen*, 351 F.3d at 51.

■ "Actual copying may be established 'either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are

---

2. According to the plaintiff's memorandum of law, similarities include: 1) a Toucan; 2) a turquoise Macaw that cannot fly; 3) a poisonous dart frog; 4) a monkey; 5) a Cockatoo named Nigel compared with a "Cock of the Rock named Cocknel"; 6) a courtship; 7) a carnival or a jubilee; 8) a war over nuts; 9) the capture and "incarceration" of two macaws; 10) birds on a wire; 11) clay baths; and 12) the musicality and dancing.

3. The complaint states that "[McKain's] characters for the most part, are copyrighted in an ongoing collection." The defendants first assert in the motion to dismiss that they "reserve the right to challenge the registration status of Plaintiff's work," as "[i]t is unclear that Plaintiff holds copyright registrations in any of the works or characters at issue." In a reply memorandum, however, the defendants contend that McKain does not own a valid copyright.

probative of copying between the works, and expert testimony.'" *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir.1998) (quoting *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir.1992)). The second circuit recognizes that direct evidence of copying is seldom available, and therefore, a plaintiff may establish copying circumstantially by showing "both access *and* probative similarity." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51, 56 (2d Cir.2003). In the absence of any proof of access, a complaint may establish a "striking similarity" between the two works. *See Repp v. Webber*, 132 F.3d 882, 889 (2d Cir.1997).

 "Access means that an alleged infringer had a 'reasonable possibility'—not simply a 'bare possibility'—of hearing [or reading] the prior work; access cannot be based on mere 'speculation or conjecture.'" *Jorgensen*, 351 F.3d at 51 (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir.1988)). While a plaintiff must provide "significant, affirmative and probative evidence" to support a claim of access, id. it may be "inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work," *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001).

 Here, the complaint fails to plead that the defendants had access to McKain's work. Although the plaintiff outlines various theories as to how the defendants could have gained access to her work, the theories involve hacking, remote access to the plaintiff's work, stalking, breaking into the plaintiff's home, and wiretapping. These allegations amount to nothing more than speculation and conjecture. In one scenario described in a memorandum of law, McKain concedes that it "sounds preposterous" and "illogical" to claim that the defendants literally entered her home and stole her work, but maintains that it is "highly probable" that a "common thief" could have stolen the material. She further hypothesizes that a "Hispanic male (from Florida)," a "black male from New Jersey," or "Free Masons" could be responsible for the stolen works. The complaint also conjures up a conspiracy between Carlos Saldanha, the superintendent of her apartment complex, and her neighbor, implying a connection because of their Hispanic heritage. Another far-reaching allegation contends that Saldanha is somehow connected to McKain's neighbor because the two individuals hail from New Jersey.

The court concludes that the complaint fails to establish a particular link or chain of events from her work to the production of the movies. The allegations are merely speculative, and the complaint fails to allege facts sufficient to show that the defendants had a reasonable possibility of reading the plaintiff's work.[4] The broad generalizations and possibilities cannot, as a matter of law, establish that the defendants had access to or had any reasonable opportunity of accessing McKain's work.

"If a plaintiff cannot demonstrate a reasonable possibility of access, its infringement claim will fail absent proof of a 'striking' similarity between the original and infringing works." *Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 326 Fed. Appx. 575, 577 (2d Cir.2009). The second circuit has held that "where the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a

---

**4.** To the extent that McKain argues that "excerpts of Avian Nation–CIA were published on [her] blog," providing the defendants with access to the material, "the mere fact that [it] was posted on the internet ... is insufficient by itself to demonstrate wide dissemination." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F.Supp.2d 500, 515 (S.D.N.Y.2008).

showing of access.'" *Jorgensen v. Epic/ Sony Records,* 351 F.3d 46, 56 (2d Cir. 2003) (quoting *Lipton v. Nature Co.,* 71 F.3d 464, 471 (2d Cir.1995)).

█ The court concludes that the complaint does not state a plausible allegation establishing striking similarities between the works. The complaint alleges similar characters, including a blue macaw, a toucan, and a dart frog, all of which are typically found in a rainforest. In response to the motion to dismiss, McKain offers only generic plot developments, such as a courtship or a war, that allegedly appear in her manuscripts and in the movies. Any similarities between the works described in the complaint do not establish that they are so strikingly similar as to preclude the possibility of independent creation, let alone support an inference that the defendants copied McKain's manuscript.

Taken together, the court holds that the complaint fails to allege sufficient facts to state a claim for copyright infringement, as the court cannot draw a reasonable inference from the factual content alleged that the defendants are liable for infringing upon the copyrights of McKain's works. Specifically, the complaint is devoid of plausible allegations demonstrating that the defendants had access to McKain's work or that the works are "strikingly similar." Accordingly, the complaint cannot establish that the defendants "actually copied" McKain's work. It follows, therefore, that the complaint lacks sufficient facts to allege the second element of a copyright infringement cause of action, and the copyright infringement cause of action is dismissed.

**5.** The court observes that Connecticut may not even provide a civil remedy for these claims. *See Anderson v. Drapp,* No. CV030402737, 2003 WL 22205645, at *1

## II. Other Causes of Action

In addition to the copyright infringement claim, the complaint alleges that the defendants are responsible for "hacking, stalking, and harassment." In Connecticut, hacking, stalking, and harassment normally arise under criminal statutes. *See* Conn. Gen. Stat. § 53a–181c (stalking); Conn. Gen. Stat. § 53a–182b (harassment); Conn. Gen.Stat. § 53a–251 (computer crime).[5]

For similar reasons as already discussed, the allegations in the complaint amount to nothing more than speculation or conjecture. Therefore, to the extent that the complaint asserts causes of action for hacking, stalking, and harassment, those claims are dismissed.

Likewise, the complaint fails to allege sufficient facts to plead a cause of action for an antitrust violation. Although McKain alleges that the defendants "sabotaged" her company and committed "acts of Anti–Trust," the complaint is devoid of any facts that support a cause of action. Therefore, this claim is also dismissed.

### CONCLUSION

Based upon the foregoing, the motion to dismiss (document no. 16) is GRANTED. The clerk is directed to close this case.

It is so ordered, this 14th day of April 2015, at Hartford, Connecticut.

(Conn.Super.Ct. Sept. 5, 2003) (noting that "[t]here is no recognized civil cause of action equivalent to the criminal offense of Stalking").